**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

DIVA LYRI DEY,

Plaintiff,

v. Case No. 3:25-cv-734-MMH-LLL

T.K. WATERS, Duval County Sheriff, and JODY PHILLIPS, Clerk of Court for Duval County,

Defendants.

---

# ORDER

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss the Second Amended Complaint (Doc. 34; Motion to Dismiss), filed March 10, 2026. In the Motion to Dismiss, Defendants, T.K. Waters, Duval County Sheriff (the Sheriff), and Jody Phillips, Clerk of Court for Duval County (the Clerk),[1] seek

[1] In the Second Amended Complaint, Dey lists as defendants (1) the Sheriff; (2) the Jacksonville Sheriff's Office (JSO); (3) the Clerk; and (4) Duval County. See Second Amended Complaint ¶¶ 8–11. The Sheriff, sued in his official capacity, is the same legal entity as JSO. See Vineyard v. Cnty. of Murray, 990 F.2d 1207, 1210 n.3 (11th Cir. 1993) ("For liability purposes, a suit against a public official in his official capacity is considered a suit against the local governmental entity he represents." (citation omitted)). And a claim against JSO is a claim against Duval County. See Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1115 (11th Cir. 2005) (holding that a claim against a Florida county sheriff in his official capacity is a claim against the county); Am. Ass'n of People with Disabilities v. Harris, 647 F.3d 1093, 1096 n.2 (11th Cir. 2011) (noting that the City of Jacksonville and Duval County are consolidated and "are governed under the Charter of the Consolidated Government of the City of Jacksonville, which established a mayor-city council form of government"). Therefore, the claims against the Sheriff, JSO, and Duval County are claims against the same entity, which the Court will refer to as "the Sheriff."

dismissal of Plaintiff, Diva Lyri Dey's, Verified Federal Civil Complaint and Claims for Relief (Doc. 32; Second Amended Complaint), filed February 17, 2026. Dey filed a response in opposition. See Response to Defendants' Motion to Dismiss (Doc. 36; Response to the Motion to Dismiss), filed April 9, 2026.

Also before the Court is Dey's renewed motion for leave to file a third amended complaint. See Motion for Leave to File Amended Complaint and Incorporated Memorandum of Law (Doc. 41; Renewed Motion to Amend), filed May 28, 2026.[2] Defendants filed a response in opposition to the Renewed Motion to Amend. See Defendants' Response to Plaintiff's Motion for Leave to File Ame[n]ded Complaint (Doc. 44; Response to the Renewed Motion to Amend), filed June 11, 2026. Both motions are ripe for the Court's review.

## I. Procedural History

On June 30, 2025, Dey initiated this action by filing her Complaint and Motion for Declaratory Judgment (Doc. 1; Complaint). Dey then filed an amended complaint as a matter of right under Rule 15(a), Federal Rules of Civil Procedure (Rule(s)). See Complaint and Motion for Default Judgment (Doc. 6;

[2] Dey filed her first motion to amend on May 12, 2026. See Motion for Leave to File Third Amended Complaint and Incorporated Memorandum of Law (Doc. 39; First Motion to Amend). On May 15, 2026, the Court denied the First Motion to Amend because it failed to comply with Local Rule 3.01(g) of the Local Rules of the United States District Court for the Middle District of Florida (Local Rule(s)). See Endorsed Order (Doc. 40; Order Denying First Motion to Amend).

Amended Complaint), filed July 25, 2025. In the Amended Complaint, Dey purported to bring this action in her individual capacity and as a "representative of her private trust and Nation, United Nations from America" (UNFA). See Amended Complaint at 1.

On August 8, 2025, Defendants filed a motion to dismiss the Amended Complaint, arguing that it was a shotgun pleading and failed to state a claim for relief. See The City and Clerk's Motion to Dismiss the Amended Complaint (Doc. 8; First Motion to Dismiss). Because it appeared that Dey had not responded to the First Motion to Dismiss, the Court directed Dey to file a response. See Order (Doc. 24; Order Directing a Response to the First Motion to Dismiss), entered November 6, 2024. In addition, the Court noted that Dey had improperly attempted to bring claims on behalf of UNFA, and therefore, the Court directed the Clerk of the Court to terminate UNFA as a party and directed the parties to omit UNFA from the case caption in future filings. Id. at 1 n.1, 4.

The Amended Complaint was "a largely incomprehensible document replete with conclusory assertions and devoid of factual content" in which Dey "fail[ed] to differentiate between the two Defendants." See Order (Doc. 31; Order Striking the Amended Complaint), entered January 26, 2026, at 3, 12; see generally Amended Complaint. As such, the Court granted the First Motion

to Dismiss to the extent that the Court concluded that the Amended Complaint was a shotgun pleading. See Order Striking the Amended Complaint at 14. In particular, the Court determined that the Amended Complaint was improper because, in it, Dey (1) did not include any identifiable causes of action, id. at 10; (2) included numerous "conclusory statements that serve[d] only to confuse Defendants and the Court," id.; (3) "advance[d] legal theories that [we]re plainly meritless," id. at 11; (4) "include[d] almost no factual allegations to put Defendants on notice of what alleged conduct she seeks to challenge," id.; (5) purported to reincorporate her original complaint and its exhibits, id.; (6) failed to differentiate between the two Defendants, id. at 12; and (7) failed to state her claims "in sequentially numbered paragraphs," id. at 13. Because the Amended Complaint violated the Rules, the Court struck the filing and directed Dey to file a second amended complaint that complied with all pleading rules, which the Court explained at length. Id. at 5–10, 13–14. Significantly, the Court referred Dey to resources available to pro se litigants, including the Legal Information Program offered by the Jacksonville Federal Court Bar Association and resources available on the Court's website. Id. at 14, 14 n.6. The Court also warned Dey that "[f]ailure to comply with the Rules and this Order will likely result in dismissal of this action without further notice." Id. at 14. Additionally, the Court noted that, in the Response to the First Motion to Dismiss, Dey

continued to include UNFA as a party in the case caption despite the Court's prior directive not to do so. Id. at 2. The Court reiterated that Dey must not include UNFA in the case caption and that she must cease her attempts to file documents on behalf of UNFA. Id. at 2–3. And the Court warned Dey that "[c]ontinued failure to comply with this directive w[ould] likely result in the imposition of sanctions up to and including the dismissal of this action." Id. at 2–3.[3] Dey filed the Second Amended Complaint in response to the Order Striking the Amended Complaint. See generally Second Amended Complaint.

## II. The Second Amended Complaint

This action arises out of two occasions in which JSO officers stopped Dey when she was driving in Jacksonville, Florida. Id. Officer B.W. Murhead initiated the first traffic stop on December 31, 2024. Id. ¶¶ 13–15. During this stop, Dey "informed [Officer] Murhead repeatedly" that her vehicle "was under trust," that her license plate was "federal," and that Officer Murhead "lacked jurisdiction." Id. ¶ 17. After some back and forth with Officer Murhead and a

[3] This is not the first time that individuals have been threatened with sanctions for invoking UNFA in federal court. In Hayes v. Bray, No. 1:22-CV-1231-ELR, 2023 WL 4048692, at *1 n.1 (N.D. Ga. May 2, 2023), the United States District Court for the Northern District of Georgia admonished the plaintiff, Sylvia Hayes, for filing documents "purport[ed] to be issued by the fictitious 'United Nations From America Federal Court'" and signed by Dey, "who claim[ed] to be a 'judge' of that non-existent court." And in Hayes v. McCalla Raymer Liebert Pierce LLC, No. 1:23-CV-5484-ELR-JSA, 2024 WL 5337529, at *11 (N.D. Ga. May 22, 2024), the same Court admonished Hayes again for filing more documents from "the 'United Nations from America Federal Court.'"

second officer, A. West, Dey told the officers she was going to slowly retrieve a bag. Id. ¶ 26. Officer West took the bag "and searched it without consent." Id. ¶ 27. About 22 minutes into the stop, a third officer, Sergeant Dash, arrived on the scene. Id. ¶ 30. And about 40 minutes into the stop, Sergeant Dash and Officer Murhead issued Dey two citations: one for an expired registration, and another for an improper tag. Id. ¶ 35.

After the first traffic stop, Dey sent a series of "notices" to JSO and to the office of the Defendant Clerk. Id. ¶¶ 53, 58, 62 (referencing documents titled "Notice to Cancel Contract," "Notice of Fault," and "Notice of Default"). According to Dey, Defendants' failure to respond to these documents constitutes "willful misconduct, and refusal to provide due process" and "demonstrate[s] knowledge, ratification, and deliberate indifference." Id. ¶¶ 64, 65.

Officer Murhead initiated the second traffic stop on June 15, 2025. Id. ¶ 38. After Officer Murhead requested Dey's registration and insurance, she gave him her "federal tag and trust documents." Id. ¶¶ 42, 43. JSO officers including Officers Murhead, E. Jiron, and Almeda then removed Dey's "federal tag." Id. ¶ 48.

Dey brings claims against Defendants in thirteen counts. Id. ¶¶ 72–84. In Count I, Dey asserts a claim for "unlawful detention" against the Sheriff under

42 U.S.C. § 1983[4] and the Fourth Amendment[5] based on the first traffic stop. Id. ¶ 72. In Count II, she asserts a claim for "illegal search" against the Sheriff under the Fourth Amendment based on the bag search conducted by "Defendant Agent West." Id. ¶ 73.[6] In Count III, she asserts a claim mirroring Count I based on the second traffic stop. Id. ¶ 74. In Count IV, she asserts a claim for "unlawful seizure/theft of property" against the Sheriff under the Fourth Amendment and the Fourteenth Amendment based on "Defendants E. Jiron, Almeda, and Murhead['s]" removal of Dey's "federal tag … without providing any receipt, inventory, or post-deprivation process." Id. ¶ 75.[7] In Count V, she asserts a claim for "unlawful issuance of citations without jurisdictional basis" against the Sheriff under the Fourth Amendment and the Fourteenth Amendment based on "Defendants[']" use of her "personal identifying information to issue citations without lawful basis." Id. ¶ 76. In Count VI, she asserts a claim for "harassment" against the Sheriff under § 1983, the Fourth Amendment, and

[4] 42 U.S.C. § 1983 provides, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." Id.

[5] In relevant part, the Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Am. IV.

[6] Notably, Officer West is not named as a defendant in this action. See Second Amended Complaint at 1, ¶¶ 8–12.

[7] Officers Jiron, Almeda, and Murhead are not named as defendants in this action. See Second Amended Complaint at 1, ¶¶ 8–12.

the Fourteenth Amendment based on Officer West's alleged "course of intimidating and coercive conduct … constituting an unreasonable seizure and deprivation of liberty." Id. ¶ 77. In Count VII, she asserts a claim for "harassment" against the Sheriff under § 1983, the Fourth Amendment, and the Fourteenth Amendment based on Officer Murhead's "repeated stops … after being made fully aware" of Dey's "Federal Jurisdiction." Id. ¶ 78. In Count VIII, she asserts a claim for "emotional distress" against the Sheriff under § 1983 and 28 U.S.C. § 1367 based on Officer Murhead's "unlawful detention and coercive actions" during the first traffic stop. Id. ¶ 79. In Count IX, she asserts a claim mirroring Count VIII based on the second traffic stop. Id. ¶ 80. In Count X, she asserts a claim for "retaliatory enforcement" against the Sheriff under § 1983, the First Amendment, and the Fourth Amendment based on Murhead's "retaliatory enforcement by issuing citations and seizing property in response to [Dey's] protected assertion of constitutional rights." Id. ¶ 81. In Count XI, she asserts a claim for "identity misuse under color of law" against the Clerk under the Fourth Amendment and the Fourteenth Amendment based on the Clerk's use of Dey's "personal identifying information to process citations without lawful basis." Id. ¶ 82. In Count XII, Dey asserts a claim for a "due process

violation" against the Clerk under § 1983, Monell,[8] and the Fourteenth Amendment based on the Clerk's "fail[ure] to properly respond" to the documents Dey sent the Clerk. Id. ¶ 83. And, in Count XIII, Dey asserts a claim for "administrative and legal interference" against the Clerk based on the Clerk's failure to respond to Dey's phone calls before issuing Dey fines. Id. ¶ 84.

Dey attaches and incorporates into her Second Amended Complaint 134 pages of exhibits. See Exhibits (Doc. 32-1). She references many, but not all, of these exhibits in the body of her pleading. The exhibits include, among others, various documents Dey sent to the Clerk (those referenced in the body of the Second Amended Complaint and additional documents), see, e.g., Notice of Default in Dishonor Consent to Judgment (Doc. 32-1 at 1–8), a copy of Dey's "federal tag," see (Doc. 32-1 at 31), and an "invoice" Dey made out to JSO for its allegedly unlawful activity, see Jacksonville Sherriff's Office Violations Invoice (Doc. 32-1 at 56–57). Many of the attached documents have no discernable connection to this action whatsoever. See, e.g., Security Agreement (Doc. 32-1 at 50–55); Laws of Maxim (Doc. 32-1 at 97–106) (a list of 334 general statements, including, in number 188, "[w]hen the reason, which is the soul of a law, ceases to exist, the law itself should lose its operative effect," and in

[8] See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) (holding that municipalities and other subdivisions of states are "persons" under § 1983).

number 250, "[o]ne who gives nothing who has nothing"); Declaration of Nation Status (Doc. 32-1 at 110) (a document purporting to "[d]eclare[] the status of a Republic Nation of Gods").

## III. Motion to Dismiss

In the Motion to Dismiss, Defendants contend that, like the Amended Complaint, the Second Amended Complaint should be dismissed for failure to state a claim and as a shotgun pleading. See generally Motion to Dismiss. In the Response to the Motion to Dismiss, Dey states that Defendants do not specify which of her claims fail, which elements of her claims have not been alleged, and which of her factual allegations are insufficient. See Response to the Motion to Dismiss at 7. She also contends that her Second Amended Complaint satisfies the requirements of the Rules because Defendants demonstrate a proper understanding of her claims. Id. at 9–10. And, according to Dey, her Second Amended Complaint is not a shotgun pleading because each of her counts "[i]dentifies a specific legal violation[,] [i]s based on a defined set of facts," and "[r]elates to discrete actions by Defendants." Id. at 11.

In some respects, the Second Amended Complaint is an improvement over the Amended Complaint. For example, Dey largely heeded the Court's directives to (1) omit UNFA from the case caption; (2) rely only on materials pleaded in the Second Amended Complaint and not incorporate by reference her

earlier pleadings; (3) state causes of action in separately identified counts; (4) differentiate between the Sheriff and the Clerk; and (5) state her factual allegations in numbered paragraphs. See generally Second Amended Complaint. Nevertheless, the Court concludes that this action is due to be dismissed because, despite the Court's prior warning and Defendants' two motions to dismiss, Dey's Second Amended Complaint remains an impermissible shotgun pleading.[9]

First, like the Amended Complaint, the Second Amended Complaint is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." See Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1322 (11th Cir. 2015). Indeed, while the Second Amended Complaint itself is reasonably concise, Dey includes 134 pages of exhibits, many of which appear to have no relationship whatsoever to her traffic stops, the Sheriff, or the Clerk. See, e.g., Second Amended Complaint ¶ 3 (referencing attached documents titled "Maxims of Law" and "Hierarchy of Laws" which appear to have no relationship to Dey's claims for constitutional violations). Even if some of the exhibits helped in understanding Dey's claims, this

[9] Before identifying the deficiencies in the Amended Complaint, the Court set forth the applicable pleading rules at length. See Order Striking the Amended Complaint at 5–10. No party has contended that the Court misconstrued the applicable authority. Thus, the Court assumes that the parties are familiar with the law set forth in that order and does not repeat it here.

marginal benefit would be outweighed by the time required to sift through all 134 pages and attempt to determine which documents support which claims. See Barmapov v. Amuial, 986 F.3d 1321, 1327–28 (11th Cir. 2021) (Tjoflat, J., concurring) ("Our district courts have neither the manpower nor the time to sift through a morass of irrelevant facts in order to piece together claims" for plaintiffs.). Moreover, as before, Dey "advances legal theories that are plainly meritless." See Order Striking the Amended Complaint at 11. For example, Dey reiterates her contention that the Court operates under a "Hierarchy of Laws" with "Universal Laws" that "[d]eal with energies" at the top, followed by "Natural Laws" and "Laws of Maxim[,] [a]lso known as 'God's Laws'" that "come straight out of the Bible and are the highest laws of the land." See Second Amended Complaint ¶¶ 3, 10; Hierarchy of Laws (Doc. 32-1 at 131).

Second, although Dey specifies in her counts which claims she brings against the Sheriff and which she brings against the Clerk, she still fails to specify which of the defendants each of her claims is brought against because, in Counts I–X, she still refers to the plural "Defendants" and she also refers to Officers West, Jiron, Almeda, and Murhead as "Defendants" even though these individuals are not listed as parties in the case caption or in her subsection identifying the parties. Compare Second Amended Complaint ¶¶ 8–11, with id.

¶¶ 72–81. Thus, it remains unclear who Dey intends to hold responsible for the alleged wrongdoing asserted in Counts I–X.

Third, although Dey organizes her "claims" in separately identified counts, several of her claims are impossible to understand and, as far as the Court can discern, do not correspond to any recognized causes of action. For example, in Counts VI and VII, she brings claims for "harassment" and contends the claims are based on § 1983, the Fourth Amendment, and the Fourteenth Amendment. Id. ¶¶ 77,78. But there are no claims for "harassment" under these provisions. In Counts VIII and IX, she brings claims for "emotional distress," which Dey contends are actionable under § 1983 and 28 U.S.C. § 1367. Id. ¶¶ 79, 80. But emotional distress is a category of damages, not a cause of action under § 1983, and Dey does not specify what violation of her rights would entitle her to emotional distress damages. See generally id. Notably, neither § 1983 nor § 1367 is a source of substantive rights. See Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1299 (11th Cir. 2007) (as to § 1983); 28 U.S.C. § 1367. In Counts XI–XIII, Dey asserts claims against the Clerk for "identity misuse under color of law," a due process violation based on the Clerk's failure to respond to Dey's "notices," and "administrative and legal interference" based on the Clerk's failure to respond to Dey's phone calls. See Second Amended Complaint ¶¶ 82–84. Despite using pseudo-legalese, Dey makes no

attempt to support or explain these frivolous claims. See generally id.; Response to the Motion to Dismiss.

Looking at Dey's pleading as a whole and at the above deficiencies in combination, the Court concludes that Dey fails to give Defendants "adequate notice of the claims against [them] and the grounds upon which each claim rests." See Weiland, 792 F.3d at 1323. Dey mixes arguably meritorious theories with plainly frivolous ones, and it is not Defendants' or the Court's responsibility to separate the former from the latter.[10] On this record, the Court is convinced that Dey is unable or unwilling to comply with the Court's directives and the requirements of the Rules and that nothing less than dismissal will suffice. See Sarhan v. Miami Dade Coll., 800 F. App'x 769, 772 (11th Cir. 2020).[11] "Even pro se plaintiffs must comply with pleading rules or face judgment day," Tran v. City of Holmes Beach, 817 F. App'x 911, 915 (11th Cir. 2020), and for Dey, that day has come. Despite the Court's guidance on the

[10] Dey's arguments to the contrary fail. Indeed, for the most part, the contentions she raises in the Response to the Motion to Dismiss are conclusory and misconstrue the relevant filings. For example, Dey's statements that Defendants do not specify which of her claims fail is flatly contradicted by the Motion to Dismiss, in which Defendants give specific (though brief) reasons to dismiss each of Dey's claims. See, e.g., Motion to Dismiss at 7 (explaining why Dey's claims against the Clerk are nonsensical). And even if Dey is correct that she adequately identifies the factual basis of each of her claims, this does not make up for the fact that the legal basis of her claims—and who she brings the claims against—is impossible to discern.

[11] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

problems with her Amended Complaint, two fully briefed motions to dismiss in which Defendants argued that Dey's pleading should be dismissed on shotgun-pleading grounds, and ample opportunities to fix those deficiencies, the Second Amended Complaint remains a shotgun pleading. Accordingly, the Second Amended Complaint is due to be dismissed with prejudice.[12]

**IV. Renewed Motion to Amend**

Dey requests leave to file a third amended complaint "in order to further clarify the factual and legal basis of the claims [she seeks to] assert[], refine the presentation of claims arising under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments, and incorporate additional factual information obtained through continuing investigation and records requests." See Renewed Motion to Amend at 2. Because Dey already filed her Amended Complaint as a matter of right, she may only file a third amended complaint with the Court's leave. See Fed. R. Civ. P. 15(a)(2).

"Although [l]eave to amend shall be freely given when justice so requires, a motion to amend may be denied on numerous grounds such as undue delay, undue prejudice to the defendants, and futility of the amendment." Haynes v.

[12] Because the Court finds the Second Amended Complaint is due to be dismissed as a shotgun pleading, the Court does not reach Defendants' argument that the Second Amended Complaint also fails to state a claim upon which relief can be granted. See, e.g., Barmapov, 986 F.3d at 1328 (Tjoflat, J., concurring) ("[D]istrict courts are flatly forbidden from scouring shotgun complaints to craft a potentially viable claim for a plaintiff.").

McCalla Raymer, LLC, 793 F.3d 1246, 1250 (11th Cir. 2015) (alteration in original) (quoting Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ. ex rel. Univ. of S. Fla., 342 F.3d 1281, 1287 (11th Cir. 2003)). Additionally, "[a] motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." Long v. Satz, 181 F.3d 1275, 1279 (11th Cir. 1999); see also McGinley v. Fla. Dep't of Highway Safety and Motor Vehicles, 438 F. App'x 754, 757 (11th Cir. 2011) (affirming denial of leave to amend where plaintiff did not set forth the substance of the proposed amendment); U.S. ex rel. Atkins v. McInteer, 470 F.3d 1350, 1361–62 (11th Cir. 2006) (same). Relatedly, Local Rule 3.01(a) requires a memorandum of legal authority in support of a request from the Court. See Local Rule 3.01(a). And Local Rule 3.01(h) provides that "[a] motion … may not incorporate by reference all or part of any other motion, legal memorandum, or brief."

The Court concludes that the Renewed Motion to Amend is due to be denied because Dey fails to attach a proposed third amended complaint or set forth the substance of her proposed amendment. Dey provides general reasoning and conclusory statements as to the contents of her proposed amendment and the justification for it. See, e.g., Renewed Motion to Amend at 2. Yet she completely fails to identify any specific changes she would like to

make, and indeed, "states that the proposed [third] amended complaint is not yet finalized due to ongoing investigation, continued review of records, identification of additional responsible parties presently unknown to [Dey], and the need to further clarify factual allegations and claims. Id. at 2–3. And she continues to maintain that the Second Amended Complaint is sufficient. Id. at 3. Thus, the Renewed Motion to Amend is entirely devoid of any reasoning or factual basis that would warrant the filing of a third amended complaint. Additionally, Dey fails to satisfy the requirement that a request from the Court include a memorandum of law and, in direct violation of Local Rule 3.01(h), Dey purports to "preserve[] and incorporate[] prior arguments concerning the sufficiency of the pleadings." See Renewed Motion to Amend at 3. Notably, this action has been pending for over a year, and despite guidance from the Court, reference to resources for pro se parties, and notice from Defendants that they challenged the sufficiency of her pleading, Dey has failed to prepare a proper pleading or provide any indication that she can do so. On this record, the

Renewed Motion to Amend is due to be denied. See McGinley, 438 F. App'x at 757; Local Rule 3.01(a).[13]

Accordingly, it is

**ORDERED:**

1. Defendants' Motion to Dismiss the Second Amended Complaint (Doc. 34) is **GRANTED** to the extent that Diva Lyri Dey's Verified Civil Complaint and Claims for Relief (Doc. 32) is **DISMISSED WITH PREJUDICE** as a shotgun pleading.

2. Dey's Motion for Leave to File Amended Complaint and Incorporated Memorandum of Law (Doc. 41) is **DENIED**.

3. Dey's Renewed Motion for Preservation of Evidence, Production of Records, and Limited Expedited Discovery with Incorporated Memorandum of Law (Doc. 48) is **DENIED** as moot.

---

[13] Dey filed a motion in which she asks the Court "for an Order requiring the preservation and production of records relating to the incidents described in the [Second Amended] Complaint and permitting expedited discovery for the purpose of identifying all responsible parties." See Plaintiff's Renewed Motion for Preservation of Evidence, Production of Records, and Limited Expedited Discovery with Incorporated Memorandum of Law (Doc. 48; Renewed Motion for Expedited Discovery), filed July 13, 2026, at 1. Because the Court is dismissing this action with prejudice without leave to amend, the Renewed Motion for Expedited Discovery is due to be denied as moot. Moreover, in seeking discovery before filing a viable complaint, Dey puts the discovery cart before the pleading horse. See United States v. Cuya, 964 F.3d 969, 973 (11th Cir. 2020) ("[I]n civil cases generally, a party is not entitled to discovery before an action is brought—indeed, [she] may not seek discovery until after [she] has not only filed a complaint, but a well-pleaded one."); see also Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009) (explaining that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").

4. The Clerk of the Court is directed to enter **judgment** for Defendants and against Dey.

5. The Clerk of the Court is further **directed** to terminate any pending motions and deadlines as moot and close the file.

**DONE AND ORDERED** in Jacksonville, Florida this 20th day of August, 2026.

Marcia Morales Howard

**MARCIA MORALES HOWARD**
United States District Judge

lc33

Copies to:
Pro Se Party
Counsel of Record